1  KERSHAW, CUTTER & RATINOFF, LLP
   William A. Kershaw (State Bar No. 057486)
2  Email:  wkershaw@kcrlegal.com
   C. Brooks Cutter (State Bar No. 121407)
3  Email:  bcutter@kcrlegal.com
   Stuart C. Talley (State Bar No. 180374)
4  Email: stalley@kcrlegal.com
   John R. Parker, Jr. (State Bar No. 257761)
5  Email: jparker@kcrlegal.com
   401 Watt Avenue
6  Sacramento, California  95864
   Telephone: (916) 448-9800
7  Facsimile:  (916) 669-4499

8

9  Attorneys for Plaintiffs
   Michael James Goodglick, Karen Young,
10 Joshua Gilson, Brandon Ellison Reininger,
   Trevor Antunez, Jessica Lares, Jaywill Sands,
11 Bryan Colver, Jaclyn Badolato, Nicole
   Stankovitz, and Vinny Curbelo
12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15

16 | MICHAEL JAMES GOODGLICK, | Case No. 10-cv-02862 |
   KAREN YOUNG, JOSHUA GILSON,
17 BRANDON ELLISON REININGER,       **FIRST AMENDED CLASS ACTION
   TREVOR ANTUNEZ, JESSICA LARES,   COMPLAINT**
18 JAYWILL SANDS, BRYAN COLVER,     1.  Violation of the Federal Communications
   JACLYN BADOLATO, NICOLE              Act
19 STANKOVITZ, and VINNY CURBELO,   2.  Products Liability – Negligence
   on behalf of themselves and all others who  3.  Products Liability – Defect in Design,
20 are similarly situation,             Manufacture, and Assembly
                                    4.  Products Liability – Breach of Express and
21                                      Implied Warranty of Merchantability
                                    5.  Intentional Misrepresentation
22                 Plaintiffs,      6.  Negligent Misrepresentation
          vs.                       7.  Fraud by Concealment
23                                  8.  Unfair Business Practices (California
                                       Business and Professions Code § 17200)
24 APPLE INC., AT&T CORP.,          9.  Consumer Legal Remedy Act (California
                                       Business and Professions Code § 17500)
25                                  10. Unjust Enrichment
26                 Defendants.
                                    **DEMAND FOR JURY TRIAL**
27

                                    -1-

1      Plaintiffs Michael James Goodglick, Karen Young, Joshua Gilson, Brandon Ellison

2 Reininger, Trevor Antunez, Jessica Lares, Jaywill Sands, Bryan Colver, Jaclyn Badolato, Nicole

3 Stankovitz, and Vinny Curbelo, (collectively, "Plaintiffs") on behalf of themselves and all others

4 similarly situated, bring this complaint against Apple Inc., and AT&T Corp. (collectively,

5 "Defendants"), and alleges as follows:

6 **INTRODUCTION**

7     1.    This is a class action against Defendants arises from their defective design and

8 manufacturing of the Apple iPhone 4 (the "iPhone 4"), manufactured and marketed by

9 Defendants and sold in connection with AT&T's monthly service plan with access to its cellular

10 network. The iPhone 4 manifests design and manufacturing defects that were known to

11 Defendants before it was released which were not disclosed to consumers, namely, a connection

12 problem caused by the iPhone 4's antenna configuration that makes it difficult or impossible to

13 maintain a connection to AT&T's network. Defendants have failed to provide customer support

14 to assist iPhone 4 customers regarding this defect. Consumers are left with three options: hold

15 their phones in an awkward and unnatural manner; return their phones and pay 10% "restocking

16 fee", or purchase Apple's own "bumper" cases for their phones, costing $29.95 in addition to the

17 premium they have already paid for the phones themselves, which may somewhat ameliorate the

18 iPhone 4's defects.

19 **THE PARTIES**

20     2.    Plaintiff Michael James Goodglick is, and at all relevant times hereto has been, a

21 resident of the State of California. Plaintiff Karen Young is, and at all relevant times hereto has

22 been, a resident of the State of California. Plaintiff Joshua Gilson is, and at all relevant times

23 hereto has been, a resident of the State of California. Plaintiff Brandon Ellison Reininger is, and

24 at all relevant times hereto has been, a resident of the State of California. Plaintiff Trevor

25 Antunez is, and at all relevant times hereto has been, a resident of the State of California. is, and

26 at all relevant times hereto has been, a resident of the State of Texas. Plaintiff Jaywell Sands is,

27 and at all relevant times hereto has been, a resident of the State of California. Plaintiff Bryan

Colver is, and at all relevant times hereto has been, a resident of the State of New Jersey. Plaintiff Jaclyn Badolato is, and at all relevant times hereto has been, a resident of the State of New York.  Plaintiff Nicole Stankowitz is, and at all relevant times hereto has been, a resident of the State of New Jersey.  Plaintiff Vinny Curbelo is, and at all relevant times hereto has been, a resident of the State of California.  Plaintiffs all purchased iPhone 4 phones in June 2010, either at Apple and AT&T's retail stores, or through a pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites.

3.     Defendant Apple Inc. ("Apple") is a California corporation that maintains its principal place of business at 1 Infinite Loop, Cupertino, California, USA, 95014. Apple has developed, designed, manufactured, assembled, branded, promoted, marketed, distributed and/or sold the Product throughout the United States.

4.     Defendant AT&T Corp. (AT&T) is a New York corporation that, at all relevant times, was doing business in the State of California.  AT&T developed, designed, manufactured, assembled, branded, promoted, marketed, distributed and/or sold the Product throughout the United States.

5.     Plaintiff is informed and believes and based thereon alleges that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged. In committing the unlawful and wrongful acts as alleged herein, Defendants planned and participated in and furthered a common scheme by means of manufacturing, marketing and selling the Product with AT&T's monthly service plan for access to its cellular network, despite the Product's inability to maintain connectivity to the network. Further, Defendants failed to provide adequate customer service to Plaintiff and the Class to cope with this defect.

## CLASS ACTION ALLEGATIONS

6.     Plaintiff brings this action on behalf of himself and all other persons similarly situated within the United States of America, or such states as the Court determines to be

1  appropriate. This action has been brought and may properly be maintained pursuant to the
2  provisions of Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(3), and 23(c)(4)(A) and
3  satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority
4  requirements.

5      7.    The Class is currently defined as follows: "All persons within the United States
6  who have purchased an Apple iPhone 4 since June 15, 2010."

7  **A.    Numerosity**

8      8.    Class members are so numerous that individual joinder of all members is
9  impracticable. While the precise number of Class members has not been determined at this time,
10 and the facts to determine that number presently are within Defendants' sole control, based on
11 public reports Plaintiff believes the number of Class members who have bought the iPhone 4 and
12 purchased AT&T wireless service during the class period is over 1.7 million people.

13     9.    Class members are readily ascertainable. Defendants' sales, service plan and
14 subscription records contain information as to the number and location of all Class members, a
15 significant number of whom are still under service contracts with AT&T. Because Defendants
16 Apple and AT&T should have accurate and detailed sales and service information regarding
17 individual Class members and up-to-date contact information, including their e-mail or SMS
18 addresses, an easy and accurate method is available for identifying and notifying Class members
19 of the pendency of this action.

20 **B.    Commonality**

21     10.   Common questions of law and fact predominate over questions affecting
22 individual Class members. These common questions of law and fact include the following:

23          (a)    Whether Defendants advertised and sold the Apple
24          iPhone 4 by promoting the Product's speed and performance, when
25          in fact the actual performance was materially different, and worse,
26          than the promises and claims made by Defendants;

27

(b)     Whether Defendant were negligent in the design, manufacturing, and distribution of the iPhone 4;

(c)     Whether the iPhone 4 units designed, manufactured, marketed, distributed, or sold by Defendant from June 15, 2010 until the present unfit for their intended purpose and use because of their design;

(d)     Whether Defendants breached any warranties in selling the iPhone 4 units;

(e)     Whether Defendants intentionally misrepresented material facts relating to the character and quality of the iPhone 4;

(f)     Whether Defendants failed to disclose material facts about limitations in the speed and performance characteristics of the Apple iPhone 4 to consumers, and;

(g)     Whether Defendants forced Class members to pay unjust charges for the goods and services they were sold by Defendants, as well as whether that failure violates statutory and common law prohibitions against such conduct, as detailed more fully below.

## C.     Typicality

11.     Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs sustained injury and a loss of money or property arising from, and as a result of, Defendants' unlawful common course of conduct. Plaintiffs purchased the Apple iPhone based in substantial part on the uniformly advertised claim of the phone having the characteristics of increased data transfer speed and greater performance than the phone provides. Those representations were a substantial factor in their decision to purchase the Apple iPhone 4. Plaintiffs have received, at best, sporadic speed or connection to the AT&T wireless network with their Apple iPhone 4s. They did not receive any disclosures from Defendants Apple or AT&T before or after purchase explaining the

material limitations in the Apple iPhone 4 and how its design and interaction with AT&T network materially reduces its performance such that the phones do not in fact provide network connectivity and access, as a result of the iPhone 4's inherently defective design and manufacture. As a result, Plaintiffs were sold a defective iPhone 4 unit, which drops calls and data service when held in a manner consistent with normal cellular phone use. Plaintiffs have experienced numerous dropped calls and data connections, and as a result, Plaintiffs are left with a device that cannot be used for the normal purpose and in the normal manner in which such devices are intended to be used. Plaintiffs are unable to return the phone without incurring a substantial restocking fee. As a result of the defect in the iPhone 4, Plaintiffs have suffered monetary damages. Defendants' design, manufacture, marketing, distribution, or sale of the defective iPhone has directly and proximately caused all class members to suffer injury. Accordingly, Plaintiffs have been subjected to substantially the same wrongdoing as all other class members. Plaintiffs and all class members have sustained identical monetary damages due to the purchase of the defective iPhone 4 product.

**D.   Adequacy of Representation**

12.    Plaintiffs can fairly and adequately represent and protect the Class's interests. Plaintiffs' claims are both typical of the Class's claims and are based on facts that are common to the Class. The Class representatives have suffered injuries and damages arising from Defendants' conduct similar to the injuries and damages suffered by the Class. As such, Plaintiffs can adequately represent the Class because they seek the same or similar remedies that would be available to other Class members. No irreconcilable conflicts exist between the positions of Plaintiffs and those of the Class members.

13.    Plaintiffs have retained attorneys who are competent and experienced in litigating significant class actions to represent their interests and that of the Class. Counsel have significant experience in handling class actions and the types of claims asserted herein, and have been appointed as class counsel by courts in other actions. Plaintiffs and their counsel already have done significant work in identifying and investigating the potential claims in this action, and are

1   willing to devote the necessary resources to vigorously litigate this action. Plaintiffs and their

2   counsel are aware of their fiduciary responsibilities to the Class to represent fairly and

3   adequately the Class and are determined to discharge those duties by seeking the maximum

4   possible recovery for the Class based on the merits of these claims and the available resources.

5   **E.**   **Superiority of a Class Action**

6         14.    A class action is a superior method for resolving the claims herein alleged as

7   compared to other available group-wide methods for adjudicating these issues. The remedy to

8   resolve the common class-wide issues regarding the issues detailed herein would be to replace

9   existing iPhone 4s with versions that work properly; to refund the cost of the Apple iPhone 4, or

10   to advance funds to iPhone 4 users for the provision of Apple's "Bumper" case or other iPhone 4

11   cases if those cases can remedy the manufacturing defects of the phone as described herein.

12   Because of the nearly-certain low individual damage amount, which is less than $1,000 per Class

13   member in almost every conceivable circumstance, individual Class members would have little

14   incentive to prosecute such claims on an individual basis. Such individual actions are not cost-

15   effective or practical, as the costs associated with proving a prima facie case would exceed the

16   obtainable recovery.

17         15.    Important interests are served by addressing the issues raised in the Complaint in

18   a class action. Adjudication of individual claims would result in a great expenditure of court and

19   public resources. Resolving the claims on a class-wide basis results in significant cost savings.

20   Class action treatment allows similarly situated persons to litigate their claims in the manner that

21   is most efficient and economical for the parties and the judicial system.

22         16.    There is a substantial likelihood of inconsistent verdicts, which would frustrate

23   the resolution of these legal issues for Defendants and force them to comply with inconsistent

24   legal standards.

25         17.    Failure to certify a class would make it impossible for a great many of the Class

26   members to seek relief. For those who seek judicial relief, there is a strong likelihood that

27   separate court rulings would lead to inconsistent verdicts, working a substantial prejudice on

Defendants, especially, as in this case, where equitable relief is being sought. A class action presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

18.    Plaintiffs are unaware of any insurmountable difficulties in the management of this action to preclude its maintenance as a class action and believe their claims can all be established at trial on a class-wide basis.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over the subject of this Complaint under the Class Action Fairness Act, 18 U.S.C. § 1332(d). In the aggregate, the damages suffered and sought to be recovered by Plaintiff and the Class exceed the Court's jurisdictional minimum for a class action. The exact amount of damages caused to Class members cannot be precisely determined without access to Defendants' records.

20.    Claims arising under the Federal Communications Act create a Federal question that this Court must determine under 18 U.S.C. § 1331.

21.    This Court has jurisdiction over Defendants because Defendants are either a corporation or an association organized under the laws of California, a foreign corporation or association authorized to do business in California and registered with the California Secretary of State, or does sufficient business in or has sufficient minimum contacts with California, or otherwise intentionally avails itself of the California markets through the promotion, marketing, advertising and/or sales of their products and services in California to render the exercise of jurisdiction by California courts permissible under traditional notions of fair play and substantial justice.

22.    Under 28 U.S.C. Section 1391, venue is proper in this District because Apple is headquartered in, and maintains its principal place of business within, this District. Moreover, a substantial portion of the acts and practices underlying this Complaint occurred here.

23.    Because Defendant Apple sold the Product through its web site, essential acts consummating the sale of each and every Product occurred in this District.

## **STATEMENT OF FACTS**

24.     Defendant Apple is a consumer electronics and computing company that entered the retail business for cell phones in 2007 when it announced the production of its first "smartphone," the first generation iPhone.  Smartphones are multi-functional mobile devices with advanced capabilities.  Smartphones have become a lucrative market for companies, who are scrambling for market share in this highly competitive field.  In June 2010, Apple released the iPhone 4, its fourth-generation smartphone, touting a new design for its iPhone smartphone that features a metal band that wraps around the edge of the phone on four sides.  The band serves as the iPhone 4's antenna.

25.     In the United States, AT&T has been and remains the exclusive wireless carrier that allows the iPhone 4 to be used on a 3G wireless network.

26.     An estimated 1.7 million iPhone 4s were sold or delivered in the first week of its release, June 21 through 25, 2010.

27.     The iPhone can be purchased in connection with a new two-year contract with AT&T for $199 for a version with 16 gigabytes ("GB") of internal memory, or $299 for 32 GB of internal memory, a price which is subsidized by AT&T.  Customers with existing AT&T contracts who are not eligible for an upgrade must purchase the 16 GB and 32 GB phones for $499 and $599, respectively.

28.     The iPhone 4 has been widely marketed and distrubuted.  First officially announced by Apple on June 7, 2010 by Steve Jobs, CEO of Apple, the phone was advertised by Apple and AT&T as a having redesigned wireless antenna placement, with its antenna now integrated into the metal side plates encasing the outer edges of the phone.  Defendants and Steve Jobs in particular claimed this new antenna design improved call quality and reception, and made no reference to the necessity of holding the phone in an awkward position or to spend more money on a case that may correct the problem.

29.     Users of the iPhone 4 across the United States and the world have found that this design "upgrade" to the iPhone causes a serious problem with connectivity.  Because the antenna

for the phone surrounds the entire phone, it is nearly impossible to hold the phone without touching the antenna.   Touching an antenna on a cell phone invariably results in decreased functionality of the phone.

30.   These design and manufacturing defects have been well-established by users, who have documented the problem—when the phone is touched on its metal edge, particularly in the lower corners of the phone, its connection to AT&T's wireless network is severely decreased or disappears altogether.  This problem was apparent immediately after the phone began shipping to customers the week of June 21, 2010.

31.   Steve Jobs himself has responded to a customer inquiry from a user at the Macrumors.com web forum regarding the issue as follows:

> MacRumors forum user samcraig emailed Steve Jobs about the low signal issue while holding the new iPhone 4 in a specific way. The potential issue has been generating a lot of discussion. Samcraig emailed Steve Jobs:
>
> *Question - What's going to be done about the signal dropping issue. Is it software or hardware?*
>
> To which, Jobs replied with a typically short response:
>
> *Non issue. Just avoid holding it in that way.*
>
> In a followup email, Jobs then expanded with this explanation:
>
> *Gripping any phone will result in some attenuation of its antenna performance, with certain places being worse than others depending on the placement of the antennas. This is a fact of life for every wireless phone. If you ever experience this on your iPhone 4, avoid gripping it in the lower left corner in a way that covers both sides of the black strip in the metal band, or simply use one of many available cases.*

Steve Jobs has been known to respond to emails and we were able
to log into Samcraig's email account to verify the authenticity of
the emails, so we believe these are real.

Arnold Kim, Macrumors.com, "Steve Jobs Describes iPhone 4 Signal Strength as a 'Non Issue',"
June 24, 2010, at http://www.macrumors.com/2010/06/24/steve-jobs-describes-iphone-4-signal-
strength-a-non-issue/ (last visited June 30, 2010).

32.     For the first time since the first generation iPhone was introduced on June 27,
2009, Apple is now marketing and selling a first-party case for the iPhone, a rubber band-like
strip that surrounds the metal edge of the phone that serves as its antenna, called a "Bumper".
The "Bumper" retails on Apple's website and brick and mortar stores for $29.95 each.

33.     In sum, Apple's response to the problem inherent to the iPhone 4's design has
been two fold: hold it differently, or purchase from Apple a $29 "Bumper" case that surrounds
the entire metal band encircling the phone.

34.     Plaintiffs are informed and believe and thereon allege that this is a known defect
in the iPhone 4 which was never disclosed to its purchasers, and which Apple now is using as a
means to further enrich itself at the expense of its users, who purchased a phone with known
design defects, as information published at Gizmodo.com tends to demonstrate:

Apple acknowledges the iPhone 4's reception problems. Their
solution: Hold it differently or buy a case. But if this is an Apple
design problem, they should fix it for real or give out cases for
free.

We have evidence that proves that the iPhone 4 antenna problem
was caused by an internal cultural problem at Apple, one that
plagues more than just the iPhone 4, but the iPad and probably
future Apple products as well.

A source in Apple's engineering team tells us that the kind of reception issues found in the iPhone 4 are a symptom of an internal issue that's been going on for a while—extremely inflexible mandates around the industrial design of products during their development. Jon Ive and his team of industrial designers can run "a little amok sometimes", they said, coming up with and steadfastly insisting on designs that, while aesthetically pleasing, cause the engineering team extreme difficulty in terms of implementation and maintaining the highest levels of functionality.

…

Now, Apple is facing public backlash over the consequences of those design decisions.

It's a very real problem

On top of the many user submitted complaints the press received, many with video proof, we took an informal poll. The results: About 40 percent of iPhone 4 owners responded that they had seen the issue first hand. Other sites report similar percentages. Righmobilephone—a cellphone comparison site in the UK—took a pool among 836 iPhone 4 users, finding 93% affected by the problem (a theory here is that people in the US notice it less because they blame AT&T's traditionally lousy network). Of those, 63% were "particularly angered" about Steve Jobs' response, which suggested users should "avoid holding the phone

1         in that way" to avoid loss of signal.

2

3         This is an unprecedented amount of user complaints. In our daily

4         lives here in Gizmodo, we have experienced the problem many

5         times, ruining an otherwise great experience. Some of us didn't run

6         into the problem at first, but after a few days, we clearly noticed it.

7         At this point, it seems to us that the question is not if people would

8         experience the problem or not, but when would they experience it.

9 Gizmodo.com, "Sign Here If You Think Apple Should Give Free Cases to Fix the iPhone 4's

10 Problems," June 28, 2010, at http://gizmodo.com/5573177/apple-do-the-right-thing-and-give-

11 away-the-iphone-bumpers (last visited June 30, 2010).

12       35.    Plaintiffs and other members of the Class were injured in fact and lost money or

13 property as a result of Defendants' material misstatements and omissions of material fact, paying

14 more to receive inferior service and an inferior product in relation to what they believed they had

15 purchased.

16       36.    As a result of Defendants' material misrepresentations and omissions of material

17 facts, Plaintiffs and other members of the Class are locked into a two-year service plan with

18 device that provides inferior wireless network connectivity. A substantial factor in entering into

19 those agreements was the representation that the iPhone 4 would operate fully functional and as

20 an actual improvement, rather than a retrogression, from earlier versions of the phone.

21       37.    Defendants acted in concert to sell the iPhone 4 and either knew, should have

22 known, or were obligated to understand that they were trying to sell Apple iPhone 4 devices that

23 in regular use would suffer substantially lacking wireless network connectivity and performance,

24 and that the Apple iPhone 4 itself suffered from defective hardware and/or software. Plaintiff and

25 other Class members were injured, either directly or indirectly, in response to the representations,

26 advertising and/or other promotional materials that were prepared and approved by Defendants

27 and disseminated on the face of the product and/or through assertions that contained the

representations regarding the iPhone 4 and AT&T's wireless network. Had the true facts been disclosed, Plaintiff and other Class members would not have purchased the iPhone 4 at the prices and under the terms and conditions to which they were and are subjected, or put in a position where they must pay additional funds to Apple or other parties in order to make the iPhone 4 a fully-functional device.

38.     Defendants failed to disclose at the time of making their false and misleading statements to Plaintiff and the Class that the iPhone 4 itself was defective and inadequate to provide the represented performance and speed, resulting in injury to the Plaintiffs and the Class.

39.     Prior to the release of the iPhone 4, Defendant widely distributed promotional literature showing the phone being held in a manner that causes the voice and data connectivity to drop. Defendant represented to the public, to plaintiff, and to class members, that the iPhone 4 could be held in a manner in which people typically hold cell phones. If the iPhone 4 is held in a manner consistent with Defendant's advertisements and marketing materials, it will not function as intended.

40.     Plaintiffs are informed and believe, and on that basis, herein allege that Defendants did not act with due care when designing, manufacturing, marketing, and selling the defective iPhone 4.  Defendants also failed to use due care by failing to issue a voluntary recall or at the least by failing to waive the restocking fee for returned iPhone 4s.

41.     At all relevant times, Defendants had actual or constructive knowledge of the foregoing problems with the iPhone 4 antenna design and placement and, therefore, is directly liable for the injuries to Plaintiffs and class members.

42.     Plaintiffs, individually and on behalf of all class members, alleges that they had no knowledge of the defects inherent in the iPhone 4. Plaintiffs and class members could not have known or reasonably discovered, or had reason to know of the defect inherent in the iPhone 4 until after they purchased and began using the product.  Plaintiffs and class members were informed and believed, and allege thereon, that they could not have known or reasonably discovered that Apple's defective design of the iPhone 4 would cause the harm suffered by

1   Plaintiffs and class members.

2       43.     Defendants knowingly concealed the defect in the iPhone 4 until it became clear

3   by overwhelming proof presented in the media that the iPhone 4 was defective.  By engaging in

4   the conduct described thus far, Defendants are guilty of fraud, and Plaintiffs and class members

5   are, therefore, entitled to recover exemplary and punitive damages.

6                                  **FIRST CAUSE OF ACTION**

7                                     Against All Defendants

8           (Violation of the Federal Communications Act, 47 U.S.C. §§ 201 and 207)

9       44.     Plaintiffs incorporate by reference each and every paragraph of this First

10  Amended Class Action Complaint as though fully set forth herein.

11      45.     Pursuant to the Federal Communications Act ("FCA"), 47 U.S.C. section 201(b),

12  "All charges, practices, classifications, and regulations for and in connection with such

13  communication service, shall be just and reasonable, and any such charge, practice,

14  classification, or regulation that is unjust or unreasonable is declared to be unlawful."

15      46.     Pursuant to 27 U.S.C. Section 207, Plaintiff has a private right of action to enforce

16  the rights granted under Section 201(b) in this Court. "Any person claiming to be damaged by

17  any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery

18  of the damages for which such common carrier may be liable under the provisions of this

19  chapter, in any district court of the United States of competent jurisdiction."

20      47.     Based on the conduct alleged above, Defendants have violated Section 201(b) of

21  the Federal Communications Act, because, as previously determined by the Federal

22  Communication Commission in rulings relating to whether false and misleading claims can

23  constitute a violation of the FCA, their charges for the Apple iPhone 4 as an internet access

24  device and the companion AT&T premium service plans as detailed above that Plaintiff and

25  Class Members were required to purchase were unjust based upon the claims they made as

26  compared to what was actually provided. AT&T also misrepresented or omitted material facts

27  relating to the quality of the wireless coverage service that would be available to Class Members

using the Apple iPhone 4. AT&T's Apple iPhone 4 service was thus not provided in accordance with its terms and conditions or in accordance with the promise included in advertising for the Apple iPhone 4, resulting in a material difference between their promises and actual performance. Even if Defendants are found to have been charging a "reasonable rate" for their products and services, they are still subject to a claim for damages for non-disclosure or false advertising of the material facts set forth herein based on its misrepresentations or failing to inform Class Members of other material terms, conditions, or limitations on the services provided Class Members.

## SECOND CAUSE OF ACTION

Against All Defendants

(Products Liability – Negligence)

48.   Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

49.   Defendants, in designing, manufacturing, marketing, and distributing the iPhone 4 had a duty to Plaintiffs and class members to do so in a reasonable manner and to ensure that the product was without defect.

50.   Defendants breached this duty when it placed the defective product into the stream of commerce either with knowledge or negligently unaware of its defective nature.

51.   As a direct and proximate result of Defendants' negligence, the defective iPhone 4 has caused economic injury to Plaintiffs and all class members.

## THIRD CAUSE OF ACTION

Against All Defendants

(Products Liability – Defect in Design, Manufacture, and Assembly)

52.   Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

53.   The iPhone 4 units that are the subject of the instant action were not reasonably fit, suitable, or safe for their intended use by reason of a defect in their design, manufacture, or

assembly, which caused them to not function properly as a cellular communication device.

54.    The defect in design, manufacture, or assembly existed at the time Defendants placed the iPhone 4 units into the stream of commerce.

55.    The iPhone 4 units were used in their intended and reasonably foreseeable way when they failed to function properly and caused economic damage and harm to Plaintiffs and all class members.

56.    As a direct and proximate result thereof, Plaintiffs and class members have been injured and damaged.

<u>**FOURTH CAUSE OF ACTION**</u>

Against All Defendants

(Products Liability – Breach of Express and Implied Warranty)

57.    Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

58.    Plaintiffs and Class members purchased their Apple iPhone 4s and used them for their ordinary and intended purpose of providing consistent, reliable and sustained access to AT&T's network, and entered into agreements with Defendants or their agents and received uniform warranties in connection with the purchase of such phones.

59.    The Apple iPhone 4 cannot perform its ordinary and represented purpose because the Apple iPhone 4 does not provide consistent connection to the AT&T wireless network in combination with ordinary use of the Apple iPhone 4.  Whether the problem is with the Apple iPhone 4 itself or with the AT&T network, or a combination of the two, is irrelevant as to whether the warranty was breached.

60.    When Defendants placed the Apple iPhone 4 into the stream of commerce, they knew, reasonably should have known, or were obligated to understand that the intended and ordinary purpose of their phone was to provide consistent connectivity to AT&T's wireless network and that users would expect regular connectivity and materially faster data transfer rates than other devices and previous iPhone through ordinary use of the Apple iPhone 4.

61.     Plaintiffs and the Class purchased their Apple iPhone 4s with the reasonable expectation that they would receive reliable and sustained connectivity to AT&T's network. The advertisements Defendants disseminated that stressed the excellence and reliability of the Apple iPhone 4, and its new antenna design constitute a warranty that the products would operate as advertised during their useful life, upon which Plaintiffs and the Class reasonably acted. The Apple iPhone 4 is not fit for its warranted, advertised, ordinary and intended purpose of providing reliable network connectivity and is in fact defective, or would not pass without objection in the trade or industry in terms of being unable to provide consistent and reliable network connectivity through ordinary use. This defect has manifested for all Plaintiffs and Class members as they do not consistently receive network connectivity using their Apple iPhone 4.

62.     Defendants' breach of the warranty described above also constitutes a violation of Cal. Civ. Code § 1792, et seq.

63.     Plaintiffs and Class members were injured and are entitled to damages as a result of such breaches. Plaintiff and the Class request relief as described below as appropriate for this Cause of Action.

## FIFTH CAUSE OF ACTION

Against All Defendants

(Intentional Misrepresentation)

64.     Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

65.     At all times herein referred to, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, or selling the iPhone 4 units which are the subject of the instant litigation.

66.     Defendants, acting through its officers, agents, servants, representatives, or employees, delivered the iPhone 4 units to their own retail stores, distributors, and various other distribution channels.

67. Defendants willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the iPhone 4 units. These misrepresentations are contained in various media advertising and packaging disseminated or caused to be disseminated by Defendants, and such misrepresentations were reiterated and disseminated by officers, agents, representatives, servants, or employees of Defendants, acting within the line and scope of their authority, so employed by Defendants to merchandise and market the product. Specifically, the promotional literature showed the iPhone 4 units being used and held in a manner which causes the units to lose data and voice connectivity, and promoted the new antenna design of the iPhone 4 as improving reception performance.

68. Defendants' representations were made with the intent that the general public, including Plaintiff and class members, rely upon them. Defendants' representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof.

69. In actual and reasonable reliance upon Defendant's misrepresentations, Plaintiffs and class members purchased and used the iPhone 4 units for their intended and reasonably foreseeable purposes: i.e., as smartphones. Plaintiffs and class members were unaware of the existence of facts that Defendants suppressed and failed to disclose. If they had been aware of the suppressed facts, Plaintiffs and class members would not have purchased the defective iPhone 4 units at the pricing and contractual terms at which they were sold by Defendants.

70. Plaintiffs and class members are informed and believe, and thereon allege, that Defendants misrepresented material facts with the intent to defraud Plaintiffs and class members. Plaintiffs and class members were unaware of the intent of Defendant and relied upon the representations of Defendant in agreeing to purchase the iPhone 4 units.

71. Plaintiffs and class members' reliance on the representations of Defendant was reasonable.

72. In actual and reasonable reliance upon Defendant's misrepresentations, Plaintiffs and class members purchased the defective iPhone 4 units and used them in the way in which they were intended, the direct and proximate result of which was injury and harm to the Plaintiffs

and class members.

## SIXTH CAUSE OF ACTION

Against All Defendants

(Negligent Misrepresentation)

73.    Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

74.    Defendants negligently and recklessly misrepresented various material facts regarding the quality and character of the iPhone 4 and its service, under circumstances where Defendant either knew or, in the exercise of reasonable care, should have known that the representations were not true or were not known to be true. These misrepresentations were contained in various advertising, packaging, and correspondence from Defendants, and such misrepresentations were further reiterated and disseminated by the officers, agents, representatives, servants, or employees of Defendants acting within the scope of their authority.

75.    In reliance upon these misrepresentations, Plaintiffs and class members purchased the iPhone 4 for use as a cellular communication device. Had Plaintiffs or class members known the true facts, including, but not limited to, the fact that the iPhone 4 units were defectively designed, they would not have purchased the units from Defendants.

76.    As a direct and proximate consequence of Defendants' negligent misrepresentations, Plaintiffs and class members have been injured.

## SEVENTH CAUSE OF ACTION

Against All Defendants

(Fraud By Concealment)

77.    Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

78.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew that the iPhone 4 units would lose connectivity when used in their normal intended manner, and that Defendants concealed this fact.'

79.     Defendants had a duty to disclose this information to Plaintiffs and class members. Defendants failed to timely disclose this information to Plaintiff and class members. Further, Defendants actively suppressed and concealed the fact that the iPhone 4 could not be held in a manner consistent with the normal usage of cellular communication devices.

80.     Defendant concealed such information for the purpose of inducing the purchase and use of iPhone 4 units designed, manufactured, distributed, and sold by Defendants.

81.     Plaintiffs and class members were unaware of the existence of facts, which Defendants failed to disclose and actively suppressed and concealed. If Plaintiffs had been aware of the facts not disclosed by Defendant, they would not have agreed to the purchase or use of the defective iPhone 4 units ad the pricing and contractual terms at which they were sold. Plaintiffs and class members are informed and believe and thereon allege that Defendants concealed such material facts with the intent to defraud Plaintiffs and class members. Under the circumstances, especially since Defendants omitted and concealed material facts, Plaintiff and class members' reliance on the representations of Defendant was reasonable.

82.     As a result of Defendants' material omissions, failure to disclose, and active concealment, Plaintiffs and class members purchased and used Defendants' defective iPhone 4 units in the way in which they were intended, the direct and proximate result of which was injury and harm to the Plaintiff and class members.

## EIGHTH CAUSE OF ACTION

Against All Defendants

(Violation of the Unfair Competition Law)

83.     Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

84.     Defendants' acts and practices, described herein, constitute unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200 et seq.

85. Defendants' acts and practices, described herein, violate the CLRA, Civil Code section 1770, et seq., and constitute unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200 et seq.

86. Defendants have engaged in unfair business practices in connection with their failure to disclose a manufacturing and design defect in the Product that was known to defendants which renders the Product unmerchantable and to fail at its essential purpose, which acts and omissions violate the CLRA, which seeks to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace. Moreover, the utility of Defendants' conduct, if any, is outweighed by the harm it causes to Plaintiff and the Class. Defendants' acts and practices are immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the Class.

87. Plaintiff and the Class have been lost money and were injured in fact by and as a result of Defendants' unfair and unlawful practices.

88. Pursuant to Business and Professions Code sections 17200, 17203 and 17204, Plaintiff, on behalf of himself, the Class and the general public, seeks an order of this Court: enjoining Defendants from continuing the unfair business practices described herein. Plaintiff additionally requests an order awarding Plaintiff and the Class restitution of all monies wrongfully acquired from the class by means of such unlawful acts and practices, so as to deter Defendants and to rectify Defendant's unfair and unlawful practices and to restore any and all monies to Plaintiff and the Class and to the general public, which are still retained by Defendants, plus interest, attorneys' fees and costs pursuant to, inter alia, Code of Civil Procedure section 1021.5.

### NINTH CAUSE OF ACTION

Against All Defendants

(Violation of the California Consumers Legal Remedies Act)

89. Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

90.     Defendants provide "services" within the meaning of California Civil Code sections 1761(a), 1761(b) and 1770.

91.     Defendants are "persons" within the meaning of California Civil Code sections 1761(c) and 1770.

92.     Users of Defendants' services, including Plaintiff and the Class, are "consumers" within the meaning of California Civil Code section 1761(d) and 1770.

93.     Plaintiff's and each and every Class member's use of the services offered by Defendants constitute "transactions" within the meaning of California Civil Code sections 1761(e) and 1770.

94.     Defendants' unfair or deceptive acts or practices as described herein were undertaken by Defendants in transactions intended to result or which resulted in the sale of goods and services to consumers, and were intended to induce, and did in fact induce, Plaintiff and the Class to purchase for personal use such good and services, which they would not have otherwise purchased.   Further, Defendants' suppression and/or concealment of the material facts as described herein was calculated to induce, and did in fact induce, Plaintiff and the Class to provide valuable consideration to Defendants.

95.     Defendants' joint and concerted practices, acts and course of conduct as described herein violates the California Consumers Legal Remedies Act ("CLRA") in that they caused the following unfair and deceptive practices to occur:

A.     Defendants "represent[ed] that goods or services . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;" in violation of section 1770(a)(5) of the CLRA

B.     Defendants advertised goods and services with the intent not to sell them as advertised.  Civ. Code § 1770(a)(9);

C.     Defendants represented that a transaction confers or involves rights, remedies, or obligations which it does not have or

involve, or which are prohibited by law. Civ. Code § 1770(a)(14); and

        D.    Defendants "represented that the transactions were supplied in accordance with a previous representation when they were not" in violation of section 1770(a)(16) of the CLRA

96.    Defendants' practices, acts and course of conduct as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to her or her detriment. In engaging in their violations of the CLRA, Defendants actively concealed and failed to disclose material facts about the true characteristics of the integrated special offer transactions in which Plaintiff and the Class Members participated.

97.    Defendants engaged in these unfair and/or deceptive acts and practices with the intent that they result, and which did result, in completed, false, and misleading integrated special offer transactions alleged herein.  As a direct and proximate result of Defendants' violations of law, Plaintiff and the Class have been injured.  Pursuant to the provisions of Civil Code section 1782, Plaintiff provided notice to Defendants in conjunction with the filing of the original Complaint in this action (although the Complaint is an appropriate notice of violations) of his intention to seek damages under Civil Code sections 1750 et seq. unless Defendants corrected, repair, replace or otherwise rectify their violations of the CLRA.  The notice demanded that Defendants take steps as are appropriate to rectify the violations and requiring Defendants to give notice to all affected consumers of their intent to act.  If the Defendants fail to adequately respond to Plaintiff's demand within thirty (30) days from the date the notice is served, Plaintiff will amend this complaint to seek actual and punitive damages from Defendants according to the CLRA.

98.    By the filing of this Complaint, Plaintiff seeks an order enjoining the unlawful practices described herein and an Order requiring Defendants to notify the Class of their violations of the CLRA and the remedy they will provide to them.  Plaintiff and the Class are entitled to equitable relief in the form of restitution and disgorgement of all earnings, profits,

compensation and benefits obtained by Defendants as a result of their violations of the CLRA, along with other appropriate relief including reasonable attorneys' fees and expenses.

## TENTH CAUSE OF ACTION

Against All Defendants

(Unjust Enrichment)

99.     Plaintiffs incorporate by reference each and every paragraph of this First Amended Class Action Complaint as though fully set forth herein.

100.    Defendants have benefited and been enriched by the above-alleged conduct. Defendants have collected fees and generated revenue from the unlawful conduct described above.

101.    Defendants have knowledge of this benefit.

102.    Defendants have voluntarily accepted and retain this benefit.

103.    The circumstances, as described herein are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class.

104.    Plaintiff and the Class are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair and inequitable conduct as alleged herein.  Plaintiff and the Class may make claims on a pro rata basis for restitution.

105.    Accordingly, and in addition, Plaintiff seeks the imposition of a constructive trust on those monies by which the Defendants have been unjustly enriched as a result of the unlawful practices described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows as appropriate for the above causes of action:

1.     An award of actual, statutory and/or exemplary damages, as appropriate for the particular Causes of Action;

2.      A temporary, preliminary and/or permanent order for injunctive relief enjoining Defendants from pursuing the policies, acts and practices complained of herein;

3.      A declaratory judgment stating that Defendants may not pursue the policies, acts and practices complained of herein;

4.      A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to undertake an informational campaign to inform members of the general public as to the wrongfulness of Defendants' practices;

5.      An order requiring disgorgement of Defendants' ill-gotten gains by requiring the payment of restitution to Plaintiff, as appropriate;

6.      Reasonable attorneys' fees;

7.      All related costs of this suit;

8.      Pre- and post-judgment interest; and

9.      Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff and the Class demand a trial by jury on all claims so triable.


DATED:  June 30, 2010.                    KERSHAW, CUTTER & RATINOFF


By:   */s Stuart C. Talley*
        STUART C. TALLEY

        William A. Kershaw
        C. Brooks Cutter
        John R. Parker, Jr.
        401 Watt Avenue
        Sacramento, California  95864
        Telephone: (916) 448-9800
        Facsimile: (916) 669-4499

        *Attorneys for Plaintiffs*